# UNITED STATED DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **VANDERBURGH HOUSE, LLC,** | ) | |
| **SOUTHBRIDGE RE, LLC,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | **NO. 18-40063-TSH** |
| | ) | |
| **THE CITY OF WORCESTER,** | ) | |
| **JOHN R. KELLY, DAVID C. HORNE,  and** | ) | |
| **ANNE S. REFELO,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER
### March 30, 2021

**Hillman, D.J.**

## Background

Vanderburgh House, LLC ("Vanderburgh") and Southbridge Re, LLC ("Southbridge" and together with Vanderburgh, the "Plaintiffs") have filed suit asserting federal and state civil rights claims against the City of Worcester ("City"), John R. Kelly ("Kelly"), David C. Horne ("Horne") and Ann S. Refolo, Esq. ("Refolo" and together with the City, Kelly, and Horne, the "Defendants").  The Plaintiffs manage sober recovery housing at two locations in Worcester, MA.  This complaint stems from the Plaintiffs' request to continue operating those facilities as single-family residences rather than complying with orders to change their use classification. The Plaintiffs assert claims under the Fair Housing Act ("FHAA"), 42 U.S.C. § 3601, *et seq.* (Count I), discrimination under Mass.Gen. L. ch. 151B ("Chapter 151B") (Count II), violation of the Massachusetts Zoning Act ("MZA") , Mass.Gen.L ch. 40A, §3 (Count III), intentional

interference with contractual relations with Plaintiffs' tenants (Count IV); and violation of the

Massachusetts Civil Rights Act ("MCRA"), Mass.Gen. L. ch. 12, § 11H-11I (Count V).

This Memorandum of Decision and Order addresses Plaintiffs' motion to dismiss the

complaint for failure to state claim (Docket No. 7), and Plaintiffs' motion for preliminary

injunction (Docket No. 17). For the reasons set forth below, the Defendants' motion to dismiss is

*granted*, in part, and *denied*, in part and the Plaintiff's motion for preliminary injunction is

*denied*.

## THE MOTION TO DISMISS

### Standard of Review

To overcome a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint

must allege sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 667, 129 S. Ct. 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

546, 127 S. Ct. 1955 (2007).   The plausibility of a claim is evaluated in a two-step process.

*Manning v. Boston Med. Ctr. Corp*., 725 F.3d 34, 43 (1st Cir. 2013).  First, the court must

separate the complaint's factual allegations, which must be accepted as true, from its conclusory

legal allegations, which are not entitled to the presumption of truth.  *A.G. ex rel. Maddox v.*

*Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013); Manning, 725 F.3d at 43.  Second, the court must

accept the remaining factual allegations as true and decide if, drawing all reasonable inferences

in the plaintiffs' favor, they are sufficient to show an entitlement to relief.  *Manning*, 725 F.3d at

43.  The court draws on judicial experience and common sense in evaluating a complaint but

may not disregard factual allegations even if it seems that actual proof of any particular fact is

improbable.  *Iqbal*, 556 U.S. at 667, 129 S. Ct. 1949; *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955.

A motion to dismiss must focus not on whether the plaintiff will ultimately prevail, but whether

he or she is entitled to offer evidence to support the claims.  *Mitchell v. Mass. Dep't of Corr.*, 190 F.Supp.2d 204, 208 (D.Mass. 2002) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974)).

### Facts

On April 18, 2017, an inspector from the City visited a Vanderburgh property at 16 Germain Street, Worcester, MA ("Germain St.") following complaints from neighbors and the building's owner that the property was being used illegally as a sober house. On April 19th, Vanderburgh sent a letter to Mayor Petty requesting accommodations under the FHAA and/or compliance with the MZA.  On April 25, at a meeting at City Hall which included  Hunter Foote, manager of Vanderburgh, Vanderburgh's counsel, and approximately 10 City officials, the City sought further information from Vanderburgh relating to the occupancy and use of the Germain Street property.  On April 27, an assistant to State Representative John Mahoney called Vanderburgh House following a complaint from a neighbor that it was operating as a sober house.  On April 28th, Vanderburgh provided the requested documentation to the City.

On May 1, 2017, the City issued a violation notice to Vanderburgh regarding the Germain St. property asserting that a change in occupancy classification was required because the living facilities were being operated not as a single-family home, but as a "dormitory setting, congregate living facility, and/or lodging house."   The notice ordered Vanderburgh to cease and desist the use of the dwelling within 24 hours or obtain permits for the proper use classification under the Massachusetts State Building Code or a Certificate of Occupancy.

On May 17, 2017, the Plaintiffs emailed Refolo, an Assistant City Solicitor, asking her to withdraw the First Violation "as it violated State Law and ignored the request for a reasonable accommodation."  Specifically, Vanderburgh requested that the City withdraw its cease-and-

desist letter and accommodate Vanderburgh by treating the Germain St. unit as a single-family

unit.  At a May 23, 2017 City Council meeting, residents protested the use of Germain St. as a

sober facility, and unnamed City officials stated:

> The City Commissioner has issued two enforcement orders for this property . . .
> the [certificate of occupancy] sounds innocuous, but it's at the heart of this. . . I
> know it's particularly fortunate that we have a three-pronged or even more
> approach. . . the owner and the residents and the council. . . I think that bodes well
> for our neighborhood and for our city. . . I would ask our administration—I know
> our city solicitor is already on this and our Department of Inspectional Services—
> to do anything they can to have that business leave this street, leave this
> neighborhood.  It's not the right place for them . . . Anything we can do to make it
> sooner because the longer they stay, the more entrenched that they get, they'll be
> there, I hate to say it, for much too long, maybe forever.  Now is the time to move
> [the residents of 16 Germain Street] out.

Southbridge operated a sober house at 65 Kenwood Avenue, Worcester, MA ("Kenwood

Ave.)"  On February 27, 2018, neighborhood residents voiced their opposition to the sober house

at a City Council Meeting and City officials replied: "So that is the instruction to Commissioner

Kelly and the solicitor, to come up with everything that we can do within the law to protect this

neighborhood moving forward."  On March 1, 2018, in an order signed by Kelly, the City

Building Commissioner and Horne, the City Deputy Building Commissioner, the City ordered

Southbridge to cease and desist its use as a dwelling as there had been a change in property use

("Second Violation Notice"). The order stated that Kenwood Ave. was no longer operating as a

single-family residence and was unlawfully operating as a "dormitory setting, congregate living

facility, and/or lodging house," and was required to cease and desist operating or obtain permits

or a Certificate of Occupancy.   On March 6, 2018, Southbridge sent a letter to Horne and Kelly

asking the city to permit the Kenwood Avenue residence to continue its classification as a single-

family home; the letter cited state laws and requested an accommodation under the FHAA.

Refolo filed a complaint in the Worcester Housing Court on behalf of the City for injunctive relief against Southbridge seeking to enforce the State Building Code.  The Plaintiffs have filed a separate action in Worcester Superior Court alleging the City violated the MZA which was stayed by the Superior Court pending the disposition of the appeal in a case raising similar issues, *Crossing Over, Inc., et al. v. City of Fitchburg*, 1785-CV-01318, 35 Mass.L.Rptr. 432, 2019 WL 659232 (Mass. Super.  Jan. 29, 2019)("*Crossing Over I*"). Because that case also addressed some of the legal issues raised in this action, this case was also stayed. On November 23, 2020, the Massachusetts Appeals Court ("MAC") issued a decision, *Crossing Over, Inc. v. City of Fitchburg*, 98 Mass. App. Ct. 822, 161 N.E.3d 432 (2020)("*Crossing Over II*"), in which it held that the prohibition on restrictions on facilities serving the disabled that are not imposed on family units of similar size under the MZA did not bar application of State health and safety laws to a sober house.  Further appellate review in that case was denied.  *See Crossing Over, Inc. v. City of Fitchburg,* 486 Mass. 1114 (2021).

### Discussion

The Defendants argue that the Plaintiffs' complaint must be dismissed for failure to state a claim because some of the claims are precluded by the Younger abstention doctrine, *see Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746 (1971), as they would interfere with ongoing state proceedings. Defendants also argue that Plaintiffs failed to exhaust their administrative remedies for claims relating to the MZA, Plaintiffs' complaint lacks adequate factual support to  support plausible claims against them, and the individual Defendants are entitled to immunity.

#### Fair Housing Act Claim

Under the FHAA, it is "unlawful . . . . to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that

buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1) (A)–(C).  "The FHAA contemplates three types of claims for perceived discrimination: disparate treatment, disparate impact, and failure to make reasonable accommodations."  *Astralis Condo. Ass'n v. Sec., U.S. Dept. of Hous. and Urb. Dev.*, 620 F.3d 62, 66–67 (1st Cir. 2010) (internal citations omitted).  The Plaintiffs have asserted an FHAA claim under both a failure to accommodate and disparate treatment theory.

### *Failure to Accommodate Theory*

"To establish a prima facie case of failure to accommodate under the FHAA, a claimant must show that [1] he is handicapped within the purview of 42 U.S.C. § 3602(h) . . . [2] that the party charged knew or should reasonably have known of his handicap . . . [3] that he requested a particular accommodation that is both reasonable and necessary to allow him an equal opportunity to use and enjoy the housing in question . . . and [4] that the party charged refused to make the requested accommodation."  *Id.* at 67 (internal citations omitted).

The Defendants argue this claim must be dismissed because the Plaintiffs' requested accommodation was not reasonable.  The Plaintiffs requested that the City treat their properties as single-family residences for the purposes of the State Building Code so that they might provide sober housing in a residentially zoned area and avoid costly architectural and engineering drawings and repairs. The Defendants cite to *Summers v. City of Fitchburg*, 325 F. Supp. 3d 203 (D. Mass. 2018), *aff'd*, 940 F.3d 133 (1st Cir. 2019), in which sober house operator requested reasonable accommodations including reducing the facility's Building Code occupancy classification and exempting it from a sprinkler law that did not apply to single family homes. The district court entered summary judgment for the defendants.  In making its finding,

the court stated, "accommodations because of cost or financial hardship are generally not considered to be reasonable or necessary." *Id.*, at 210. However, the court also noted "it is often the case that questions of whether an accommodation is reasonable and necessary are fact-intensive and not suited to resolution on a motion to dismiss or even summary judgment." *Id.* at 211. Moreover, the lawfulness of the City's zoning enforcement under the MZA is not dispositive here. "[T]o the extent that state statutes or local ordinances would undercut the FHAA's anti-discrimination provision, the former cannot be enforced." *Astralis Condo. Ass'n v. Sec., U.S. Dept. of Hous. and Urb. Dev.*, 620 F.3d 62, 69 (1st Cir. 2010) (finding Puerto Rico condominium owner was "duty-bound" not to enforce a discriminatory statute); *see also Crossing Over, Inc. v. City of Fitchburg*, 161 N.E.3d 432, 443 (Mass. App. 2020), *review denied*, 2021 WL 769501 (Mass. Feb. 12, 2021) ("To the extent that the decision of the Superior Court judge may be read to state that the sprinkler statute creates a per se bar to liability under the FHAA, we reject that analysis.").

Given prior precedent, it is questionable whether the Plaintiffs can prevail on this theory even if afforded an opportunity for further factual development. At the same time, the Court cannot find that Plaintiffs have failed to state a plausible claim under the FHAA on a reasonable accommodation theory. Therefore, Defendants' motion to dismiss this claim is denied.

<u>*Disparate Treatment Theory*</u>

"Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a motivating factor behind the challenged action. The discriminatory purpose need not be malicious or invidious, nor need it figure in solely, primarily, or even predominantly into the motivation behind the challenged action . . . . The plaintiff is only required to show that a protected characteristic played a role in the defendant's decision to treat

her differently." *Batista v. Cooperativa de Vivienda Jardines de San Ignacio*, CIV. 10-1953
GAG, 2013 WL 2123487, at *8 (D.P.R. May 15, 2013), *aff'd in part, rev'd on other
grounds*, 776 F.3d 38 (1st Cir. 2015) (citing *Comm. Servs., Inc. v. Wind Gap Mun. Auth.,* 421
F.3d 170, 177 (3d Cir.2005)).  Courts have found "[d]iscriminatory intent may be established
where animus towards a protected group is a significant factor in the community opposition to
which the commissioners are responding." *U.S. v. Borough of Audubon, N.J.,* 797 F. Supp. 353,
361 (D.N.J. 1991), *aff'd*, 968 F.2d 14 (3d Cir. 1992) (citing *A.F.A.P.S. v. Regulations & Permits
Admin.,* 740 F.Supp. 95, 104 (D.P.R. 1990)).

Viewed in the light most favorable to the Plaintiffs, the evidence demonstrates that the
City's cease-and-desist letters at both the Germain Street and Kenwood Avenue properties were
at least partially motivated by pressure from residents to prevent the operation of sober houses in
the neighborhood.  Residents voiced these desires before and during City Council meetings.
After residents complained about the Southbridge property, City officials stated at a public City
Council meeting that their "instruction to Commissioner Kelly and the solicitor [was] to come up
with everything that we can do within the law to protect this neighborhood moving forward."
City officials likewise stated that the enforcement order against the Vanderburgh property was
part of a "three-pronged or even more approach" in which "the owner and the residents and the
council" will do "anything they can to have [the sober house] leave this street, leave this
neighborhood."

Other courts have found disparate treatment based on similar facts.  For instance, in
*Oxford House-C v. City of St. Louis*, 843 F. Supp. 1556, 4 A.D.D. 1179 (E.D. Mo. 1994),
*judgment rev'd on other grounds*, 77 F.3d 249, 14 A.D.D. 644 (8th Cir. 1996), *cert. denied*, 117
S. Ct. 65, 136 L. Ed. 2d 27 (U.S. 1996), the district court found that the city's enforcement of a

zoning ordinance against sober houses was "motivated by consideration of plaintiffs' handicapped status," because "the first inspection [of the sober houses] took place on the same day the neighborhood meeting regarding [the houses] was held, in which unfounded and stereotypical fears about safety and property values were raised by the neighbors," while City officials "express[ed] hopes that [one of] the house[s] could be prevented from operating." *Id.* at 1576; *see also Valencia v. City of Springfield, Illinois*, 446 F. Supp. 3d 369 (C.D. Ill. 2020) (city violated the FHAA by enforcing a rule that treated group homes for unrelated people disabilities unfavorably and denied them housing).

Again, given prior precedent including the recent decision in *Crossing II* upholding the rights of municipalities to enforce health and safety codes in circumstances similar to the instant case, it is questionable whether even with a fully developed record the Plaintiffs could prevail on their disparate treatment claim. At the same time, they have plausibly stated a disparate treatment claim sufficient to survive a motion to dismiss.

<u>Discrimination under Chapter 151B: the Massachusetts Fair Housing Act</u>

In Count II, the Plaintiffs allege discrimination under that part of Chapter 151B comprising the Massachusetts Fair Housing Statute, which makes it unlawful to refuse reasonable accommodations for, to discriminate against, or to "deny to or withhold from any person such housing . . . because of handicap."  Mass.Gen. L. ch. 151B, § 4 (7A)(2), (8)(2). Massachusetts State Courts have decided most cases "under the FHAA and the Federal cases interpreting it, with reference to G. L. c. 151B where the statutory provisions were the same." *Crossing Over II,* 98 Mass. App.Ct. at 843 n. 17,161 N.E.3d at 443 n.17.  "The language of [the two reasonable accommodation provisions,] § 3604(f)(3)(B) of the FHAA and G. L. c. 151B, § 4 (7A) (2), [is] the same." *Id.*  The language of the two discrimination provisions is likewise

identical.  *Compare* § 3604(f)(2) *with*  Mass.Gen. L. ch. 151B, § 4 (8)(2).  Therefore, just as the Plaintiffs have sufficiently stated an FHAA claim under two theories—reasonable accommodation and discriminatory intent (disparate treatment)—their allegations suffice to state a claim under Chapter 151B.

<u>Massachusetts Zoning Act Violation</u>

<u>*MZA Violation*</u>

Plaintiffs allege a violation of the MZA through the enforcement of the State Building Code on their properties as group homes and not as family residences.  Section 3 of the MZA provides:

> [n]otwithstanding any general or special law to the contrary, local land use and health and safety laws, regulations, practices, ordinances, by-laws and decisions of a city or town shall not discriminate against a disabled person. Imposition of health and safety laws or land-use requirements on congregate living arrangements among non-related persons with disabilities that are not imposed on families and groups of similar size or other unrelated persons shall constitute discrimination. The provisions of this paragraph shall apply to every city or town, including, but not limited to the city of Boston and the city of Cambridge.

*Brockton Fire Dept. v. St. Mary Broad St., LLC*, 181 F. Supp. 3d 155, 156–57 (D. Mass. 2016).  The MZA only "limits the authority of cities and towns to adopt certain laws," and it "does not apply to state law or extend to override the adoption of [state law]."  *Crossing Over I*, 2019 WL 659232, at *5–6.

Defendants are correct that the Plaintiffs seek to modify the application of the State Building Code, as adopted by the City of Worcester.  Such allegations do not fall under the purview of the MZA.  Therefore, the Plaintiffs have failed to state a claim under the MZA upon which relief can be granted and therefore, this claim must be dismissed.

<u>*Exhaustion of Administrative Remedies and Abstention*</u>

For the sake of completeness, the Court will address Defendants' argument that it should abstain from ruling on the Plaintiffs' MZA claim, because they have filed a separate action asserting the same claim in Worcester Superior Court.  The Superior Court had stayed the Plaintiffs' action pending the disposition of the appeal of *Crossing Over I.*  The MAC has issued its decision (review was denied by the Supreme Judicial Court) and therefore, the state court has or will presumably lift the stay.  Principles of comity dictate that this Court should not act on the MZA claim until a final ruling by that court.  *See Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746  (1971).  Moreover, the "exclusive remedy" for a Plaintiff seeking review of a "denial of the plaintiffs' petition . . . based on the local zoning law" is "a complaint for judicial review under G. L. c. 40A, § 17," *Jeune v. Bd. of App. of Malden*, 91 Mass.App.Ct.  1130, 86 N.E.3d 513 (Mass. App. 2017)(Table) (citing *Rinaldi v. State Building Code Appeals Board*, 56 Mass. App. Ct. 668, 673, 779 N.E.3d 688 (2002), which "shall be instituted in the Superior Court."  Mass.Gen. L. ch. 40A, § 17.  Therefore, plaintiffs' MZA claim is properly with the Superior Court, and this Court would abstain from ruling on the MZA claim had it been adequately pled.

<u>Intentional Interference with Contractual Relations with Plaintiffs' Tenants</u>

To establish a claim of intentional interference with contractual relations, a plaintiff must prove that "(1) [it] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions."  *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 571 N.E.2d 1363, 1369 (Mass. 1991).

The Plaintiffs in this action allege they had contracts with tenants in their sober houses. They further allege the Defendants interfered with those contracts based on an improper

motive—to violate the civil rights of current and prospective tenants. As a result, the Plaintiffs claim that "current tenants have relapsed and/or left the Plaintiffs due to the stress" and that they have lost current and prospective tenants, although they have continued their operations.  The Defendants have not addressed these allegations in their Motion to Dismiss or Supplementary Motion to Dismiss and for that reason alone, I am denying Defendants' motion to dismiss with respect thereto.

<u>Violation of the Massachusetts Civil Rights Act (MCRA)</u>

"To establish a claim under the [MCRA] the plaintiffs must prove that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" *Martone Place, LLC v. City of Springfield*, 16-CV-30170-MAP, 2017 WL 5889222, at *22 (D. Mass. Nov. 29, 2017), *aff'd*, 18-1020, 2018 WL 11231884 (1st Cir. Dec. 19, 2018) (citations omitted). "Threat is defined as intentional exertions of pressure that would make another fearful or apprehensive of injury or harm . . .  intimidation [is] defined as "putting in fear for the purpose of compelling or deterring conduct . . . [and] coercion [is] defined as such force, either physical or moral, as to constrain [someone] to do against his will something he would not otherwise have done." *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 519 (1st Cir. 2009) (internal quotations omitted).  The MCRA applies to threats, intimidation or coercion "regardless of whether the defendant specifically intended to interfere with a right to which the plaintiff is entitled" and may be accomplished by third parties.  *See Redgrave v. Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 101, 502 N.E.2d 1375, 1379 (Mass. 1987).  The "redress of grievances, absent extraordinary

circumstances, are not sufficient to state a claim under the Massachusetts Civil Rights Act." *Bell v. Mazza*, 394 Mass. 176, 183, 474 N.E.2d 1111, 1115 (Mass. 1985).

None of the allegations in the Plaintiffs' complaint rises to the level of threats, intimidation, or coercion sufficient to state a claim under the MCRA. The Plaintiffs do not allege that they were placed in fear through threats or intimidation, nor that they were coerced through moral force to do something against their will. Even if local residents pressured the City to invoke its zoning laws, their pursuit of redress does not amount to threats, intimidation or coercion. Accordingly, Defendants' motion to dismiss Plaintiffs' MCRA claim is granted.

### Individual Defendants' Immunity from Suit

Finally, the Defendants assert that they enjoy various types of immunity from this suit. "There are two types of official immunity: absolute immunity and qualified immunity." *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 108 (1st Cir. 2015). "Absolute immunity depends not on the titles of officials but their functions." *Frazier v. Bailey,* 957 F.2d 920, 931 n. 12 (1st Cir.1992).

### *Refolo's Absolute Immunity*

Refolo, in her role as Assistant City Solicitor, has absolute immunity from all state and federal claims in this suit. "Agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Butz v. Economou*, 438 U.S. 478, 515, 98 S.Ct. 2894 (1978). For that reason, a "municipal attorney prosecuting an administrative proceeding on behalf of the City . . . is shielded by absolute immunity." *Gedeon v. Desousa*, 16-CV-30058-MGM, 2017 WL 2261129, at *2 (D. Mass. Feb.

16, 2017); *see also Dinsdale v. Commonwealth*, 424 Mass. 176, 180-81, 675 N.E.2d 374, 377-78 (Mass. 1997) (granting absolute immunity to government litigators for the performance of their duties in civil litigation).  Refolo was performing her duties as Assistant City Solicitor during all proceedings underlying this case. She is entitled to absolute immunity from all claims and therefore, the motion to dismiss the claims against her in her individual capacity is granted.

<u>*Kelly's and Horne's Qualified Immunity from Federal Claims*</u>

With respect to federal rights, qualified immunity shields government officials who are performing discretionary functions from personal liability "insofar as their conduct does not violate clearly established . . . rights of which a reasonable person would have known." *Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 91 (1ˢᵗ Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).  "[T]he qualified immunity inquiry is a two-part test. A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a [federal or] constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808 (2009).  "[T]he second, 'clearly established' step of the qualified immunity . . . has two aspects": whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right" and, "focus[ing] more concretely on the facts of the particular case[,] whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1ˢᵗ Cir. 2009) (internal quotations and citations omitted). "[I]t is not mandatory that courts follow the two-step analysis sequentially.  Courts have discretion to decide whether, on the facts of a particular case, it is worthwhile to address first whether the facts alleged make out a violation of a constitutional right. . . . particularly . . . at the pleading

stage." *Id.*, at 269–70.   With respect to Chapter 151B, two forms of immunity might apply:
common law immunity, or qualified immunity patterned after Federal qualified immunity under
42 U.S.C. §1983. *See  Breault v. Chairman of Bd. Of Fire Comm'rs of Springfield*, 401 Mass. 35,
38, 513 N.E.2d 1277;  *Duarte v. Healy*, 405 Mass. 43, 537 N.E.2d 1230, 1232 (Mass. 1989).   In
this case, I find that if Kelly and Horne are entitled to qualified immunity on the federal claims
asserted against them, they would be entitled to qualified immunity on the corresponding
Chapter 151B claims.

  Here, I can bypass the first step in the sequential analysis, that is, I need not address
whether the Plaintiffs have alleged a violation of a clearly established federal right.   Even if the
actions taken by Kelly and Horne violated the FHAA, the contours of that right were not
sufficiently clear that they reasonably should have understood that their conduct was violative of
Plaintiffs' federal rights. Kelly and Horne issued the cease-and-desist letter requiring
Southbridge to cease occupying the properties or obtain permits for a change in use classification
and  Kelly issued a cease-and-desist letter regarding the Vanderburgh property.   Kelly also
responded to the Plaintiffs' requests for reasonable accommodation with his opinion that they
must apply for a change-in-use even if they were to be treated as a single family for purposes of
the State Building Code.   Even if I were to assume their actions were violative of the FHAA, the
contours of what was permitted under that statutory scheme was not sufficiently clear to put
Kelly and Horne on notice that enforcing the State Building Code under the circumstances of this
case violated the Plaintiffs' federal rights.   Because the state law of qualified immunity is
patterned after federal law, Kelly and Horne are entitled to qualified immunity with respect to the
parallel state law claims.   Accordingly, the claims against Kelly and Horne in their individual
capacities are dismissed.

**<u>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

Plaintiffs have filed a motion for preliminary injunction to maintain the status quo during the pendency of this law suit. More specifically, Plaintiffs seek to enjoin the City from enforcing the cease-and-desist orders that it has issued with respect to the St. Germain St. and Kenwood Ave. properties.

In order to obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, that there is a potential for immediate and irreparable harm absent an injunction, that any harm to the plaintiff outweighs any harm to the defendant, and that granting a preliminary injunction would not adversely affect the public interest. *Charlesbank Equity Fund II v. Blinds To Go, Inc*., 370 F.3d 151, 162 (1st Cir. 2004). The question of likelihood of success on the merits is the critical factor in establishing plaintiff's entitled to injunctive relief. *Public Service Co. v. West Newbury*, 835 F.2d 380, 383 (1st Cir. 1987); *Auburn News Co. v. Providence Journal Co.*, 659 F.2d 273, 277 (1st Cir. 1981) ("the probability-of-success component has loomed large in cases before this court"). In this case, I find that Plaintiffs' have failed to establish a likelihood of success on the merits. Moreover, while the Plaintiffs' have established irreparable harm should the cease-and-desist orders be enforced, the remaining factors are not strongly in their favor as both the Plaintiffs and the public have strong interests and would suffer potential harm were the cease-and-desist orders enjoined: the Plaintiffs have a strong interest in maintaining sober houses which assist people in need of treatment and a place to live, while the general public *and* the residents of the sober houses have an interest in the assurance that such houses abide by the healthy and safety codes of the state and municipality.  On balance, I find that Plaintiffs' motion for preliminary injunction must be denied.

<u>**Conclusion**</u>

For the foregoing reasons:

1. the Defendants City of Worcester, John R. Kelly, David C. Horne and Ann S, Refolo, Esq.'s Motion to Dismiss Plaintiffs' Complaint (Docket No. 7) is, ***granted***, in part, and ***denied***, in part.  More specifically, all claims against Defendants John R. Kelly, David C. Horne and Ann S. Refolo in their individual capacities are dismissed.  The motion is denied as to the Plaintiffs' claims against the City of Worcester in Count I, Count II and Count IV.  The Defendants' motion is granted as to Count III and Count V; and

2. Plaintiffs' Motion For Preliminary Injunction (Docket No. 17) is ***denied***.


**SO ORDERED.**


<u>**/s/ Timothy S. Hillman**</u>
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**